# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENNEDI SMITH, and<br>SPARKELL ADAMS, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | ) | NO. CIV-15-0392-HE |
| TEXAS ROADHOUSE, INC., and<br>SCOTT ORR, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## **ORDER**

Plaintiffs Kennedi Smith and Sparkell Adams filed this negligence action in state court against Texas Roadhouse, Inc. and Scott Orr, claiming Ms. Smith was injured when she fell while walking on a handicap ramp at the Texas Roadhouse OKC restaurant in Oklahoma County. Defendant Orr and Texas Roadhouse Holdings L.L.C. ("Texas Roadhouse") removed the action, claiming the court has diversity jurisdiction despite plaintiffs and defendant Orr being citizens of the State of Oklahoma. Defendants claim Mr. Orr was fraudulently joined to defeat diversity.[1] Plaintiffs have filed a motion to remand, contending the court lacks subject matter jurisdiction because of the nondiverse defendant.[2]

---

[1] *Although defendants cite the case of* Lafailier v. State Farm Fire & Cas. Co., *391 Fed. Appx. 732 (10th Cir. 2010) in their Notice of Removal, their argument is based on fraudulent joinder, not procedural misjoinder.*

[2] *Plaintiffs apparently mistakenly sued Texas Roadhouse, Inc., instead of Texas Roadhouse Holdings, L.L.C. See Doc. #1-5, p. 2. As the action is being remanded, plaintiffs will not be required to amend the complaint to name the correct party defendant.*

"[T]he joinder of a resident defendant against whom no cause of action is pled, or against whom there is in fact no cause of action, will not defeat removal." Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983). *Accord* Smoot v. Chicago, R.I. & P.R. Co., 378 F.2d 879, 882 (10th Cir.1967) ("The joinder of a resident defendant against whom no cause of action is stated is patent sham, and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists.") (internal citations omitted). However, case law places a heavy burden on the party claiming fraudulent joinder. Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013). After disputed questions of fact and ambiguities in the controlling law are resolved in favor of the non-removing party, the court then determines whether "'that party has any possibility of recovery against the party whose joinder is questioned.'"[3] Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000) (quoting Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000)). "[T]he court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." Nerad v. AstraZeneca Pharms., Inc., 203 Fed. Appx. 911, 913 (10th Cir. 2006). "A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Id.* Where fraudulent joinder is claimed, courts must "'pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'" *Id.* (quoting Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir.1964)). Fraudulent joinder

---

[3]Oklahoma law governs this diversity action.

must be "established with complete certainty upon undisputed evidence." Smoot, 378 F.2d at 882.

In their *pro se* complaint,[4] plaintiffs allege defendant Orr is the "owner and/or managing partner of Texas Roadhouse." Doc. #1-1, p. 2.[5] They claim the restaurant property was not properly maintained, listing multiple ways defendants "acted negligently and carelessly," causing Ms. Smith to slip and fall. *Id.* They assert, among other things, that the floor and handicap ramp "had not been properly cleared of peanuts, peanut shells, and oily substances;" that defendants knew or shown have known that the peanuts, peanut shells and oily substances covered the walk-way and were "not in accordance with building and safety codes," creating a hazard to the handicapped and others who walked on it; and that defendants "failed to properly supervise the common areas in question" and "failed to maintain the premises owned by the Defendant in good and safe condition for the Plaintiff and others." Doc. #19-1, pp. 2-3. In their motion to remand plaintiffs initially argue that Mr. Orr is liable to them because of his status as a managing partner of the L.L.C. (Texas Roadhouse Holdings L.L.C.), citing 18 Okla. Stat. § 2017(B)(2).[6] They then assert that their "*pro-se* petition clearly charges Defendants in paragraph 5 with ten (10) separate chargeable

---

[4]*Plaintiffs are now represented by counsel.*

[5]*Page references for briefs and exhibits are to the CM/ECF document and page number.*

[6]*Section 2017(B)(2) is a provision of the Oklahoma Limited Liability Company Act, which provides that no provision of the articles of organization or the operating agreement shall limit or eliminate or eliminate the liability of a manager for "[a]cts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law." 18 Okla. Stat. § 2017(B)(2).*

actions or allegations of knowledge and negligence." Doc. #17, pp. 9-10.

Defendants allege in the Notice of Removal that Mr. Orr, rather than being an owner of the business or a "manager" within the meaning of the statute addressing limited liability companies, is merely the general manager of the Texas Roadhouse restaurant where Ms. Smith was injured. They contend he was "not in active charge of Texas Roadhouse on the day plaintiffs allege that Ms. Smith slipped and fell [and] could not have breached any duty to plaintiffs because he was not on shift or present at Texas Roadhouse Holdings LLC." Doc. #1, pp. 2-3. In their response to the motion to remand, defendants have submitted Mr. Orr's affidavit, which substantiates the allegations in the removal notice. Mr. Orr is an employee of Texas Roadhouse Management Corporation, a subsidiary of Texas Roadhouse, Inc. Although he is referred to as the managing partner of the Texas Roadhouse restaurant, he does not have a partnership or any ownership interest in the restaurant or any Texas Roadhouse entity. His job responsibilities are to manage and oversee the restaurant's general operations and occasionally directly run the restaurant as the on-duty manager. According to the affidavit, he was not on duty or physically present at the restaurant when Ms. Smith fell on March 7, 2013, and "would not have had direct custody or control over the premises that evening." Doc. #19-2, p. 1.

Defendants assert that because he has no ownership interest in the restaurant or Texas Roadhouse L.L.C. and was not in control of the premises the evening Ms. Smith fell, the only basis for Mr. Orr's liability would be due to his position as general manager. That is not enough under Oklahoma law, they argue, to hold him accountable to plaintiffs. Defendants

4

assert that the "potential liability of Texas Roadhouse for the condition of the restaurant premises cannot flow to Mr. Orr as general manager." Doc. #19, p. 4. Defendants rely on Hane v. Mid-Continent Petroleum Corp, 43 F.2d 406 (N.D.Okla. 1930) and Reed v. Safeway Stores, Inc., 400 F.Supp 702 (N.D. Okla. 1975). However, Hane was decided on the basis of the Factory Act of Oklahoma,[7] and the court finds J. C. Penney Co. v. Barrientez, 411 P.2d 841 (Okla. 1965), rather than Reed, to be controlling.

In Penney the Oklahoma Supreme Court "undertook to clarify the existing Oklahoma case law as to the joint liability of an employer and employee for negligence," holding "that if an employer's premises are in the custody and control of an employee who is responsible to his employer for dangerous conditions existing on the premises, then he is liable for injuries to invitees to the same extent as the employer." Smoot, 378 F.2d at 881. The court rejected a store manager's argument in Penney that he could not be sued in negligence by a shopper who fell at the store. The plaintiff in the Penney claimed she slipped on a small round object on a stairway between floors, which she claimed was littered with cigarette butts and pieces of paper. The store manager, Truhitte, had argued that his failure to discover the object and his failure to warn her of its presence were "merely acts of nonfeasance or breaches of duty he may have owed his employer, the Penney Company, but that, in Oklahoma, such non-action on his part could not be the basis of any liability to a third

---

[7]*To the extent the court relied on the lack of allegations of misfeasance in Hane, the Oklahoma Supreme Court in Penney decided to follow the modern rule which "tends to abolish the distinction between the agent's acts of commission and omission wherever such act involves a breach of duty." Penney, 411 P.2d at 850 (internal quotation marks omitted).*

5

person, like plaintiff." Penney, 411 at 849.

The Oklahoma Supreme Court rejected the nonfeasance/misfeasance distinction that some courts had used to determine whether an employee could be liable to an injured third party. Instead, it focused on whether the employee was "in control, or active charge, of the particular sphere of activity complained of" by the plaintiffs as the cause of their injuries. *Id.* at 851. The court concluded that "Truhitte, as <u>the</u> Penney Company's manager, was <u>the</u> one of the store's personnel who, ultimately, was responsible for the protection of its customers, or business invitees, against harmful, and temporary, but dangerous, conditions in the store, such as the one involved here." *Id.* (emphasis added). While there were multiple levels of managers at the Penney's store, including a building maintenance manager, who "was in charge of floor cleaning in the store," *id.* at 844, and floor or division managers, Truhitte was <u>the</u> store manager. Because he "undertook to discharge the duty his employer, Penney Company, owed its invitees, and was the custodian of the store's premises, or, in so far as such business invitees as plaintiff were concerned, was in charge of the store," the court determined Truhitte could be held personally liable to the plaintiff. *Id.* at 849.

Penney was subsequently followed in Fine v. Braniff Airways, Inc., 302 F.Supp. 496 (W.D.Okla. 1969), where the court concluded the director of passenger and cargo services for Braniff Airways could be sued in negligence, along with the corporation, by a passenger who was injured while deplaning. The director, Mr. Doggett, was responsible for insuring that proper passenger unloading procedures were enforced. He trained personnel charged with unloading passengers and supervised those operations, although he had subordinates

6

who "actually attend[ed] to passenger unloading operations for Braniff aircraft." *Id*. at 497. The court concluded the plaintiffs had "probably stated a cause of action against Doggett who [was] answerable in damages" as he appeared to be Braniff's top local agent at the airport responsible for and in control of the premises or equipment involved in the unloading of passengers. *Id.* at 498. The court's conclusion was not affected by the fact that, at the time of the accident, Doggett was temporarily on business in Braniff's office in Texas. The court stated:

> [T]his would not appear to change or dilute his responsibility, duty or liability under the Penney decision. The store manager in Penney was not at the scene of the accident when it occurred nor was Doggett. It is not believed that the decision of the court in Penney would have been different had the store manager been at home to lunch or even out of town at the time of the fall on the stairway.

*Id.*

Assuming that Mr. Orr has no ownership interest in the restaurant where Ms. Smith fell or in the L.L.C., the issue is whether he can be held liable to plaintiffs when the evidence shows that, at the time of the accident, he was away from the restaurant and not on duty. Defendants claim he is just like the store manager in Reed, 400 F.Supp at 702, who, the court concluded, could not be held liable to a customer who slipped and fell in the Safeway parking lot. Because the manager's unchallenged affidavit showed that he was on vacation and not actually present or actively working for Safeway at the time of the accident, the court

7

determined he "was in no manner in active charge of the premises." *Id.* at 705.[8]

Although Mr. Orr occasionally filled the position of "on-duty manager," he was not an "on-duty manager of Safeway." Doc. #19-2, p. 1. Instead he was the restaurant's managing partner or general manager, whose duties included "manag[ing] and oversee[ing] the restaurant's general operations." *Id.* Based on Mr. Orr's own description of his position, *id.,* he was the general manager of the restaurant, a position more similar to that of the store manager in Penney or the director of passenger and cargo services in Fine, than the on-duty or shift manager in Reed. Defendants have not provided the court with sufficient information to conclusively show otherwise and they bear the burden of demonstrating fraudulent joinder.

As the removing parties, defendants must show plaintiffs are unable to "establish a cause of action against the non-diverse party in state court." Dutcher, 733 F.3d at 988 (internal quotation marks omitted). The court concludes they have not met their burden. Plaintiffs can possibly state a viable negligence claim against Mr. Orr who, in his position as general manager, may have been "the one of the [restaurant]'s personnel who, ultimately, was responsible" for protecting its customers or business invitees from temporary but

---

[8]*The court disagrees with the Reed court's conclusion that the Oklahoma Supreme Court did not abandon the nonfeasance/misfeasance rule in Penney. See Penney, 411 P.2d at 851 (After referencing the modern rule, which abolishes the distinction between an agent's acts of commission and omission when such act involves a breach of duty, the court states: "While we do not subscribe to all that the courts said in the cited cases . . . we think the principles referred to in the foregoing quotations are sound, and should be consistently adhered to in this jurisdiction. Therefore, to the extent that any previous opinion of this Court is contrary to this one, it is hereby overruled and/or modified).*

dangerous conditions in the restaurant. Penney, 411 P.2d at 851. As defendants have not established that Mr. Orr was fraudulently joined, his presence defeats diversity jurisdiction, the basis for removal. The action must therefore be remanded.

Accordingly, due to lack of subject matter jurisdiction, plaintiffs' motion to remand [Doc. #17] is granted. This action is remanded to the District Court of Oklahoma County.

Plaintiffs have requested that they be awarded the fees and costs they incurred in conjunction with their motion to remand. When a case is remanded to state court, the nonremoving party may recover its "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). " [A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 546 U.S.132, 136 (2005). In determining whether the plaintiffs should recover their attorney's fees, the court has considered the arguments they asserted for remand and defendants' responses. The question of whether plaintiffs could state a negligence claim against Mr. Orr was not readily resolved in light of existing case law. Under these circumstances the court finds that, while remand is required, an award of fees is not warranted.

**IT IS SO ORDERED**.

Dated this 14th day of October, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE